IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| Illinois State Police Officers TASSO J. | ) | |
| KACHIROUBAS, JOHN MEDUGA, | ) | |
| WILLIE DAVIS, JAMES KIZART, | ) | |
| JESSE GARCIA, RICHARD | ) | |
| PACKERT, Former Dixmoor Lt. | ) | |
| JOSEPH FALICA, JR., Former | ) | |
| Dixmoor Deputy Chief of Police | ) | |
| MICHAEL R. MORGAN, Former | ) | |
| Dixmoor Chief of Police NICHOLAS | ) | |
| GRAVES, VILLAGE OF DIXMOOR, | ) | |
| As-yet Unknown Current or Former | ) | |
| Employees of the Illinois State Police, | ) | |
| and As-yet Unknown Current or | ) | |
| Former Employees of the Village of | ) | |
| Dixmoor, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Plaintiff, ROBERT TAYLOR, by his undersigned attorneys, complains against the

Defendants, Illinois State Police Officers TASSO J. KACHIROUBAS, JOHN MEDUGA,

WILLIE DAVIS, JAMES KIZART, JESSE GARCIA, SPECIAL AGENT RICHARD

PACKERT, Former Dixmoor Lt. JOSEPH FALICA, JR., Former Dixmoor Deputy Chief of

Police MICHAEL R. MORGAN, Former Dixmoor Chief of Police NICHOLAS GRAVES,

VILLAGE OF DIXMOOR, As-yet Unknown Current or Former Employees of the Illinois State

Police, and As-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois

(collectively, "Defendant Officers"), as follows:

**Introduction**

1.      As a result of the acts alleged herein, Plaintiff Robert Taylor spent almost 19 years in prison for a crime he did not commit.

2.      Along with his co-defendants, Jonathan Barr, James Harden, Robert Veal, and Shainne Sharp, Mr. Taylor was wrongfully convicted of raping and murdering a 14-year-old girl, Cateresa Matthews. Mr. Taylor was sentenced to spend 80 years in prison. Mr. Taylor and his co-defendants were all between 14 and 16 years of age at the time Ms. Matthews was murdered.

3.      There was no forensic evidence—fingerprints, serology, DNA or other physical material of any kind—linking Mr. Taylor or any of his co-defendants to the Matthews rape and murder. On the contrary, DNA evidence developed at the time of trial excluded Mr. Taylor and his co-defendants.

4.      Instead, the only evidence against Mr. Taylor came from the coerced "confessions" given by his co-defendants implicating Mr. Taylor, as well as Mr. Taylor's own coerced "confession." Mr. Taylor has consistently maintained that his confession was the product of physical abuse and unlawful coercion, and he steadfastly affirmed his innocence throughout his criminal proceedings and imprisonment.

5.      Years later, Mr. Taylor and his co-defendants were exonerated when DNA established that Willie Randolph, a then-33-year-old convicted sex offender, was the real perpetrator. Willie Randolph lived just blocks from where Ms. Matthews' body was found, and had an extensive record of deviant sexual conduct and violent crimes.

6.      After the coerced "confessions" were proven false, the prosecution dropped all charges against Mr. Taylor and agreed to his release. On April 17, 2012, without opposition from the prosecution, Mr. Taylor was granted a certificate of innocence from the State of Illinois.

7.      Through this action, Mr. Taylor seeks compensation for losing more than half of his life to the Defendants' misconduct, including his most formative years when he would have otherwise been graduating from high school, pursuing a career, and starting a family.

## Jurisdiction and Venue

8.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Mr. Taylor's rights as secured by the United States Constitution.

9.      This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper under 28 U.S.C. § 1391(b). Mr. Taylor resides in this judicial district and Defendant Village of Dixmoor is a municipal corporation located here. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## The Parties

11.     Plaintiff Robert Taylor is 35 years old. At the time of the victim's murder, Mr. Taylor was 14 years old and a student at Rosa Parks Middle School in Dixmoor, Illinois.

12.     At all relevant times, Defendants Tasso J. Kachiroubas, John Meduga, Willie Davis, James Kizart, Jesse Garcia, and Richard Packert were officers with the Illinois State Police employed by the State of Illinois and acting within the scope of their employment.

13.     At all relevant times, Defendants Joseph Falica, Jr., Michael R. Morgan, and Nicholas Graves were employed by the Village of Dixmoor with the Dixmoor Police Department and acting within the scope of their employment.

14.     Defendants Kachiroubas, Meduga, Davis, Kizart, Garcia, Packert, Falica, Morgan, Graves, As-yet Unknown Current or Former Employees of the Illinois State Police, and As-yet

Unknown Current or Former Employees of the Village of Dixmoor, Illinois, are referred to collectively as the "Defendant Officers."

15.     The Defendant Village of Dixmoor is a municipal corporation under the laws of the State of Illinois.

## The Matthews Murder

16.     On November 19, 1991, 14-year-old Cateresa Matthews disappeared on her way home from her grandmother's house.

17.     On December 8, 1991, 19 days after she disappeared, Ms. Matthews' body was discovered by a passerby in a grassy field near I-57 in Dixmoor, Illinois. She was found partially undressed and had been shot in the mouth.

18.     The Illinois State Police and the Dixmoor police jointly investigated Ms. Matthews' murder. In the immediate aftermath of the murder, the Defendant Officers interviewed friends, relatives, and classmates of Ms. Matthews. They learned of no information that implicated Mr. Taylor or his eventual co-defendants.

## Suppression of Evidence Relating to the True Perpetrator

19.     Tragically, Ms. Matthews was raped and murdered by Willie Randolph, a 33-year-old sex offender who lived near the crime scene. At the time of the murder, Willie Randolph had prior convictions for rape, deviate sexual assault, robbery, and armed robbery.

20.     Despite the fact that Willie Randolph was a viable suspect from the start, the Defendant Officers ignored and/or concealed evidence suggestive of his guilt. Among the evidence that the Defendant Officers ignored and/or suppressed was the fact that Randolph lived about a mile away from where Ms. Matthews was found. Randolph was paroled earlier in 1991, not long before Ms. Matthews was raped and killed.

4

21.     Further, Randolph, who was nearly 20 years older than Ms. Matthews, had previously used the exact same field where Ms. Matthews was raped and murdered to rape another young teen. He also had a history of other violent assaults on young women.

22.     On March 8, 1992, at a time when no arrests had been made in Ms. Matthews' murder and rape, the Dixmoor Police Department arrested Randolph for possession of crack cocaine after he was found wandering through the street disrupting traffic not far from where Ms. Matthews' body was found. On information and belief, the arresting officers ran Randolph's criminal history, revealing his past convictions as a violent sex offender and the fact that he was paroled shortly before Ms. Matthews disappeared.

23.     None of this information was ever disclosed to Mr. Taylor or his co-defendants before their criminal trials.

24.     After the murder, Willie Randolph continued to engage in dangerous criminal behavior, including unlawful use of a weapon, two counts of possession of a controlled substance, residential burglary, and two additional counts of burglary.

### The False Case Against Robert Taylor

25.     At the time of the Matthews murder, Plaintiff Robert Taylor was 14 years old and living in Harvey, Illinois with his parents, sister, and brother. He was attending Rosa Parks Middle School. He had nothing to do with Ms. Matthews' disappearance or murder.

26.     The Defendant Officers manufactured "evidence" that falsely implicated Mr. Taylor and his co-defendants in the crime. This fabrication of evidence included, but was not limited to, physically coercing a confession from Mr. Taylor and unlawfully manipulating his eventual co-defendants to falsely implicate Mr. Taylor by means of outright coercion and improper suggestiveness, all in violation of Mr. Taylor's constitutional rights. The means by

which the Defendant Officers coerced these false statements from his co-defendants were never disclosed to him. The Defendant Officers also fabricated statements of other witnesses in police reports and withheld exculpatory evidence obtained in the investigation, both before, during, and after Robert Taylor's criminal trial.

27.     During the 10 months after Ms. Matthews' body was found, the Defendant Officers routinely picked up and questioned teenage boys from the Dixmoor area without notifying their parents and without documenting the interviews. Shainne Sharp was questioned multiple times about Ms. Matthews' death during meetings with Defendants Graves, Kachiroubas, and As-yet Unknown Employees of the Illinois State Police and/or the Village of Dixmoor, Illinois. In these interviews, Mr. Sharp denied knowing anything about the crime and did not implicate Mr. Taylor or his co-defendants. The Defendant Officers' police reports intentionally omitted any reference to these exculpatory statements.

28.     At some time after Ms. Matthews' body was found, the Defendant Officers took 15-year-old Keno Barnes out of school and brought him to the police station to interview him about the murder. Mr. Barnes told them that he did not know anything about the crime. Nevertheless, in October 1992, the Defendant Officers, including Falica, Kachiroubas, Meduga, and Davis, fabricated a statement from Mr. Barnes wherein he falsely asserted that Jonathan Barr told him that Mr. Barr saw Ms. Matthews get in a car with Robert Taylor, Robert Veal, and some other boys, and that this was the last time Mr. Barr ever saw Ms. Matthews again. The Defendant Officers never disclosed to the prosecution or Mr. Taylor's defense counsel that they had fabricated this statement, nor did they produce Barnes' truthful exculpatory statements to Mr. Taylor or his co-defendants.

6

29.     On or about October 29, 1992, the Defendant Officers picked up 15-year-old Robert Veal from his home, cuffed and frisked him, and took him to the Cook County State's Attorney's Office at the Markham Courthouse for questioning. The Defendants told him that they wanted to question him about a murder that happened in Dixmoor.

30.     Mr. Veal was a 15-year-old with developmental and learning disabilities. He had an IQ of 56 and had difficulties with reading, writing, and comprehension that required him to be removed from public school and attend special education classes. Mr. Veal also suffered from anxiety disorders and had deafness in his right year.

31.     That Mr. Veal was developmentally-disabled was obvious to his interrogators. Yet, Mr. Veal was not allowed to have an attorney, guardian, or representative present during his unrecorded interrogation. Over the course of several hours, the Defendant Officers, including Kachiroubas and Garcia, interrogated Mr. Veal about the rape and murder of Ms. Matthews. The Defendants yelled at Mr. Veal, threatened him, and coerced him to implicate himself, Robert Taylor, Jonathan Barr, James Harden, and Shainne Sharp in the crime.

32.     As a result of this improper and undue pressure, inflicted on a 15-year-old with developmental disabilities, Mr. Veal falsely implicated himself, Mr. Taylor, Mr. Harden, Mr. Barr, and Mr. Sharp in the rape and murder of Ms. Matthews. The facts contained in that false confession were fed to him by the Defendant Officers. The Defendant Officers drafted a false handwritten statement that Mr. Veal was coerced into signing.

33.     Robert Veal was innocent of the Matthews murder. He would not have falsely implicated Mr. Taylor, himself, and the others but for the Defendants' misconduct.

34.     After obtaining Mr. Veal's false statement, the Defendant Officers, including Kizart, Howard, and Davis, sought out Mr. Taylor at his home. The Defendant Officers

misrepresented to Mr. Taylor and his mother that they wanted to question Mr. Taylor as a potential witness to an ongoing drug investigation. The Defendant Officers omitted any mention of their true motivation—to interrogate Mr. Taylor about Cateresa Matthews' murder. As a result of this misrepresentation, Mr. Taylor agreed to travel with the Defendant Officers for questioning, and his mother did not accompany him. The Defendant Officers escorted then-15-year-old Robert Taylor to the Cook County State's Attorney's Office at the Markham Courthouse for questioning.

35.     Mr. Taylor was interrogated for hours outside the presence of a parent, guardian or attorney. During his interrogation, the Defendant Officers, including Defendants Kizart, Howard, Davis, and Garcia, physically abused Mr. Taylor by repeatedly striking him in the ribs. They yelled at, threatened, and coerced Mr. Taylor until he agreed to confess to Cateresa Matthews' rape and murder.

36.     As a result of this abusive, improper, and undue pressure, inflicted on a 15-year-old, Mr. Taylor falsely implicated himself, Mr. Harden, Mr. Barr, Mr. Sharp, and Mr. Veal in the crime. Robert Taylor was innocent of the Matthews murder. He would not have falsely implicated himself but for Defendants' misconduct.

37.     To further build the false case against Mr. Taylor, on or about October 30, 1992, the Defendant Officers, including Davis, Packert, Kachiroubas, and Falica, also coerced and threatened Shainne Sharp into giving a false statement implicating himself, Mr. Taylor, and the others boys in Ms. Matthews' rape and murder. Mr. Sharp was 17 years old at the time, and the Defendant Officers refused to allow him to call his mother, grandmother, or an attorney, despite the fact that he was held in police custody for almost 21 hours before he confessed.

38.     Shainne Sharp was innocent of the Matthews murder. He would not have falsely implicated Mr. Taylor but for Defendant Officers' misconduct.

39.     Both prior to and at trial, the Defendant Officers failed to disclose to Mr. Taylor or Mr. Taylor's defense counsel that Mr. Veal's and Mr. Sharp's statements were coerced. They also failed to disclose the means employed to coerce these statements. Because these statements were made by persons themselves charged with crimes, Mr. Taylor had no means available to him—either prior to or at the time of his trial—to independently discover how the Defendant Officers obtained these false statements.

40.     Defendant Officers also sought, unsuccessfully, to coerce and fabricate statements from Mr. Harden and Mr. Barr. They interrogated the teenagers separately, outside the presence of their parents or lawyers, and without reading them their rights. The Defendant Officers yelled and screamed at Mr. Harden in an attempt to force him to confess. Mr. Barr was handcuffed to a wall, hit on the back of the head, and instructed to admit what had happened to Ms. Matthews. When Mr. Barr truthfully denied knowing anything, the Defendant Officers also yelled and screamed at him, and insisted that he confess to the murder. The Defendants showed Mr. Harden and Mr. Barr disturbing crime scene and autopsy photos, and falsely told Mr. Barr that Mr. Harden had already confessed and implicated him.

41.     During the interrogations of Mr. Harden and Mr. Barr, the Defendant Officers prepared handwritten statements for the two to sign, promising them they could go home if they did so. Despite the Defendant Officers' coercive tactics, Mr. Harden and Mr. Barr refused to sign the confessions. They consistently and truthfully maintained their innocence of the crime.

9

**Forensic Evidence Excluded Robert Taylor as the Perpetrator**

42.     No physical or forensic evidence ever linked Robert Taylor or any of his co-defendants to the crime. In fact, the physical evidence indisputably excluded the teenagers.

43.     In October 1993, a forensic scientist from the Illinois State Police examined the numerous hairs found on the victim's body and clothes and excluded Mr. Taylor and his co-defendants as the source of those hairs. Furthermore, the forensic scientist concluded that a number of the hairs did not match the victim either. This information was reported to Defendant Kachiroubas.

44.     Additionally, a bullet casing was found on Ms. Matthews' chest and a bullet was recovered from her body. Neither was ever linked to Mr. Taylor or any of his teenage co-defendants.

45.     In early 1994, the Illinois State Police crime lab tested sperm on the vaginal and rectal swabs from the victim. Although the statements attributed to Robert Veal, Robert Taylor and Shainne Sharp collectively claimed that Ms. Matthews had been vaginally raped by all five co-defendants, the DNA testing on the sperm identified a single source male DNA profile. More importantly, the profiled excluded Mr. Taylor and all of his co-defendants as the source of the semen. In June 1994, the lab made a full report of the exclusion to Defendant Kachiroubas and other Defendant Officers.

46.     The Defendant Officers ignored this critical evidence, which indicated that all of the teenagers were innocent of the Matthews rape and murder, and that the statements taken from Sharp, Veal, and Taylor were undeniably false. Despite this exonerating evidence, the Defendant Officers continued to misrepresent the circumstances under which they had obtained the statements from Sharp, Veal, and Taylor, concealing the coercion they had used and the fact that

the information in the confessions had been fed to the teenagers by the Defendant Officers. They also failed to investigate other leads—such as the true perpetrator, Willie Randolph, a convicted sex offender, who had been paroled in the neighborhood where Ms. Matthews was found shortly before the murder.

### Robert Taylor's Wrongful Conviction

47.     In January 1997, Robert Taylor stood trial for the rape and murder of Cateresa Matthews.

48.     Mr. Taylor's own coerced confession, along with the false and coerced testimony of Robert Veal and Shainne Sharp, was the only evidence that was presented against Mr. Taylor at his trial.

49.     As a complaining witness, Defendant Kachiroubas testified falsely at Mr. Taylor's criminal trial about Mr. Taylor's purported guilt and about the veracity of the other witnesses' statements.

50.     No physical evidence ever linked Mr. Taylor to the crime. In fact, the prosecution rested entirely on false statements that were contradicted by the physical evidence. Had evidence regarding the coercion of those statements, summarized above, been offered at trial, it would have changed the outcome and Robert Taylor would not have been convicted.

51.     As a proximate result of the above-described misconduct on the part of the Defendant Officers, the jury convicted Mr. Taylor of the murder, aggravated criminal sexual assault, armed robbery, and unlawful restraint of Ms. Matthews. On February 28, 1997, Mr. Taylor was sentenced to 80 years in prison. But for the Defendant Officers' misconduct, Mr. Taylor would neither have been prosecuted nor convicted.

**Robert Taylor's Exoneration**

52.     Throughout his prosecution and years of incarceration, Plaintiff Robert Taylor maintained his innocence and pursued all possible avenues to prove it.

53.     In August 2009, Mr. Taylor's co-defendant, James Harden, filed a motion for post-conviction DNA testing, which was later joined by Mr. Taylor and Mr. Barr.

54.     Cellmark Laboratories in Dallas, Texas conducted the DNA testing and obtained a single male DNA profile from the vaginal swab extracts.

55.     DNA testing again excluded all five teenagers supposedly involved in the crime. Despite the "confessions" claiming that the five co-defendants had intercourse with the victim, the testing revealed only a single male DNA profile.

56.     In March 2011, the Illinois State Police submitted the DNA profile to the Combined DNA Index System (CODIS) database, which returned a match to the DNA profile of Willie Randolph, the convicted sex offender with a long and violent criminal history who had paroled from prison not long before the murder and resided in the neighborhood where the victim's body was found.

57.     On November 3, 2011, the Cook County State's Attorney's Office requested that the Cook County Circuit Court vacate Mr. Taylor's, Mr. Barr's, and Mr. Harden's convictions and *nolle prosequi* future charges. The court vacated all of their convictions. Shortly thereafter, the court also vacated the convictions of Mr. Veal and Mr. Sharp.

58.     On April 17, 2012, the State of Illinois granted Robert Taylor a certificate of innocence without objection from the State.

**Robert Taylor's Damages**

59.     The actions of the Defendants set forth herein caused Robert Taylor to spend almost 19 years in prison for a crime he did not commit. He must now attempt to make a life for himself outside of prison without the benefit of nearly two decades of life experiences—including his adolescence and young adulthood—which normally equip adults for that task.

60.     Additionally, the emotional pain and suffering caused by losing these 19 formative years has been substantial. Mr. Taylor was forcibly taken from his family when he was just 15 years old. During his incarceration, Mr. Taylor was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right. He missed out on the ability to graduate from high school with his friends, to share holidays, births, funerals, and other life events with loved ones, the opportunity to have girlfriends, to fall in love, to marry, and to pursue a career, and the fundamental freedom to live one's life as an autonomous human being.

61.     As a result of the foregoing, Mr. Taylor has suffered tremendous damage, including personal physical injury and emotional and mental suffering, all proximately caused by the Defendants' misconduct, which caused him to be wrongfully imprisoned for 19 years.

**Count I – 42 U.S.C. § 1983**
**Violation of Due Process**

62.     Each paragraph of this Complaint is incorporated as if restated fully herein.

63.     As described more fully above, all of the Defendant Officers, while acting individually, jointly, and/or in conspiracy, as well as under color of law and within the scope of their employment, deprived Mr. Taylor of his constitutional right to due process and to a fair trial.

13

64.     In the manner described more fully above, the Defendant Officers and/or other Illinois State Police and Dixmoor employees and their agents coerced and fabricated confessions, deliberately withheld and suppressed exculpatory evidence, and fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Mr. Taylor. Absent this misconduct, the prosecution of Mr. Taylor could not and would not have been pursued.

65.     The Defendant Officers' misconduct directly resulted in the unjust criminal conviction and continuing wrongful incarceration of Mr. Taylor, thereby denying him his constitutional right to a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

66.     As a result of this violation of his constitutional right to a fair trial, Mr. Taylor suffered injuries, including but not limited to the loss of his liberty, physical harm, severe emotional distress and anguish, and financial damages.

67.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Mr. Taylor's clearly established constitutional rights.

68.     The misconduct described in this Count was undertaken pursuant to the policies and practices of the Village of Dixmoor. Among other things, the municipality was deliberately indifferent to the obvious need to train its police officers regarding how to properly discharge their duties and failed to provide any such training.

69.     By virtue of its failure to provide obviously necessary training, the Village of Dixmoor thereby effectively ratified and promoted the violations alleged herein. Among other deficiencies, the Village of Dixmoor failed to implement any training practices or programs whatsoever governing (a) proper investigative procedures in serious criminal cases; (b) the

14

mandatory constitutional obligation to disclose material and exculpatory evidence, how to recognize such evidence, and how to ensure that it is properly disclosed; and (c) how to conduct a lawful interrogation of a juvenile suspect and avoid overbearing the will of such vulnerable individuals.

70.     The Village of Dixmoor similarly failed to implement a legitimate mechanism for oversight or punishment of officers who committed misconduct in the course of their employment like that alleged in this Complaint.

71.     As a direct and proximate result of the Village of Dixmoor's failure to train and discipline its employees, police officers employed by the Village of Dixmoor engaged in obvious and preventable violations of Mr. Taylor's constitutional rights by, among other things, failing to disclose exculpatory evidence to the prosecution, Robert Taylor, his defense counsel, and his co-defendants; coercing false confessions from Mr. Taylor and his co-defendants; and causing Mr. Taylor and his co-defendants to be framed and convicted for a crime they did not commit, as alleged throughout this Complaint, all in violation of Mr. Taylor's rights under the Fourteenth Amendment of the United States Constitution.

### Count II – 42 U.S.C. § 1983
### Coercive Interrogation

72.     Each paragraph of this Complaint is incorporated as if restated fully herein.

73.     In the manner described more fully above, the Defendant Officers, acting individually, jointly, and in conspiracy, interrogated Mr. Taylor using coercive measures and physical abuse, which caused Mr. Taylor to give false and fabricated admissions in violation of his Fifth and Fourteenth Amendment rights to be free from compulsory self-incrimination and deprivation of liberty without due process of law.

74.     The actions of the Defendant Officers in using coercive and physically abusive techniques to interrogate Mr. Taylor were the direct and proximate cause of Mr. Taylor's injuries and damages, as more fully set forth above.

75.     These Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Mr. Taylor's clearly established constitutional rights.

76.     The misconduct described in this Count was undertaken by employees of the Village of Dixmoor, including but not limited to the named Defendants, pursuant to the Village of Dixmoor's policies and practices, in the manner described in paragraphs 68-71 of the Complaint.

## Count III – 42 U.S.C. § 1983
## Failure to Intervene

77.     Each paragraph of this Complaint is incorporated as if restated fully herein.

78.     In the manner described above, during the constitutional violations described herein, one or more of the Defendant Officers stood by without intervening to prevent the violation of Mr. Taylor's constitutional rights, even though they had the opportunity to do so.

79.     As a result of the Defendant Officers' failure to intervene to prevent the violation of Mr. Taylor's constitutional rights, Mr. Taylor suffered physical harm, severe emotional distress and anguish, and financial damages. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

80.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Taylor's constitutional rights.

81.     The misconduct described in this Count was undertaken by employees of the Village of Dixmoor, including but not limited to the named Defendants, pursuant to the Village

of Dixmoor's policies and practices, in the manner described in paragraphs 68-71 of the

Complaint.

### Count IV – 42 U.S.C. § 1983
### Conspiracy To Deprive Constitutional Rights

82.     Each paragraph of this Complaint is incorporated as if restated fully herein.

83.     After the murder of Ms. Matthews, the Defendant Officers and other unknown co-

conspirators reached an agreement amongst themselves to frame Mr. Taylor for the crime and to

thereby deprive Mr. Taylor of his constitutional rights, including his rights against self-

incrimination, to due process, and to a fair trial, all as described in the various paragraphs of this

Complaint.

84.     Additionally, both before and after Mr. Taylor's conviction, while he remained

unlawfully incarcerated, the Defendant Officers and other unknown co-conspirators further

conspired to deprive Mr. Taylor of exculpatory information to which he was lawfully entitled

and which would have led to either his not being charged, his acquittal, or his more timely

exoneration.

85.     In this manner, the Defendant Officers, acting in concert with other unknown co-

conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful

means.

86.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts,

including but not limited to those set forth above—such as fabricating inculpatory evidence,

withholding exculpatory evidence, committing perjury under oath, and coercing false

confessions—and was an otherwise willful participant in joint activity.

87.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Taylor's rights were violated, and he suffered physical harm, severe emotional distress and anguish, and financial damages.

88.     The misconduct described in this Count was objectively unreasonable and was undertaken with malice, willfulness, and reckless indifference to Mr. Taylor's clearly established rights.

89.     The misconduct described in this Count was undertaken by employees of the Village of Dixmoor, including but not limited to the named Defendants, pursuant to the Village of Dixmoor's policies and practices, in the manner described in paragraphs 68-71 of the Complaint.

## COUNT V – 42 U.S.C. § 1983
### Supervisory Liability

90.     Each paragraph of this Complaint is incorporated as if restated fully herein.

91.     The unfair trial, wrongful conviction, and continued unlawful incarceration of Robert Taylor were caused by the deliberate indifference and recklessness of supervisory defendants, including but not limited to Defendants Michael Morgan and Nicholas Graves, when they failed to adequately train and supervise the individual Defendant Officers.

92.     Specifically, these supervisory defendants were personally involved in the unconstitutional investigation of Mr. Taylor, or, at the very least, were deliberately and recklessly indifferent to their subordinates' unconstitutional actions and related misconduct in the case.

93.     Furthermore, these supervisory defendants failed to supervise the individual defendants in constitutionally adequate law enforcement practices, particularly those which concerned interviewing of suspects and witnesses and the production of exculpatory evidence,

thereby encouraging and/or permitting these employees and defendants to coerce and fabricate false inculpatory evidence and to withhold exculpatory and impeachment evidence, which proximately caused the constitutional deprivations suffered by Mr. Taylor.

94.     These faulty interview techniques, repeated failures to produce exculpatory evidence, fabrications, and other investigative misconduct were contrary to accepted investigation methods used by law enforcement agencies. The fact that the defendant supervisors failed to train and supervise their subordinates to ensure that they employed proper investigation procedures demonstrates their deliberate indifference and reckless disregard for Mr. Taylor's constitutional rights.

95.     The actions and omissions of the supervisory defendants proximately and directly caused the constitutional deprivations and grievous personal injuries suffered by Mr. Taylor, including the above-mentioned injuries and damages.

96.     The misconduct described in this Count was objectively unreasonable, and was undertaken intentionally, with malice, willfulness, and deliberate indifference to Mr. Taylor's clearly established constitutional rights.

97.     The misconduct described in this Count was undertaken by employees of the Village of Dixmoor, including but not limited to the named Defendants, pursuant to the Village of Dixmoor's policies and practices, in the manner described in paragraphs 68-71 of the Complaint.

### Count VI – State Law Claim
### Malicious Prosecution

98.     Each paragraph of this Complaint is incorporated as if restated fully herein.

99.     The Defendant Officers accused Mr. Taylor of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence and to institute and continue the judicial proceedings.

100.    The Defendant Officers caused Mr. Taylor to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in emotional, financial, and personal physical injuries.

101.    Statements of the Defendant Officers regarding Mr. Taylor's alleged culpability were made with knowledge that said statements were false and perjured. The Defendant Officers also fabricated evidence by coercing false inculpatory testimony from purported eyewitnesses. The Defendant Officers were aware that, as described more fully above, no true or reliable evidence implicated Mr. Taylor in the Matthews rape and murder, all inculpatory evidence was coerced and fabricated, and the forensic evidence indicated Mr. Taylor's innocence. The Defendant Officers withheld the facts of their manipulation and the resulting fabrications from Mr. Taylor and his defense counsel. Furthermore, the Defendant Officers intentionally withheld from and misrepresented to prosecutors and the grand jury facts that further vitiated probable cause against Mr. Taylor, as set forth above, and failed to investigate evidence that would have led to the actual perpetrator.

102.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Taylor's rights and the rights of others.

103.    As a result of this misconduct, Mr. Taylor sustained, and continues to sustain, serious injuries including physical harm, severe emotional distress and anguish, and financial damages.

**Count VII – State Law Claim**
**Intentional Infliction of Emotional Distress**

104.    Each paragraph of this Complaint is incorporated as if restated fully herein.

105.    The acts and conduct of the Defendant Officers as set forth above were extreme and outrageous. The Defendant Officers' actions were rooted in an abuse of their power and authority, and they were undertaken with intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Taylor, as is more fully alleged above.

106.    As a direct and proximate result of the Defendant Officers' actions, Mr. Taylor suffered and continues to suffer severe emotional distress.

107.    Because the Defendant Officers acted within the scope of their employment with the Village of Dixmoor and the Illinois State Police, the Village of Dixmoor and the State of Illinois, respectively, are liable as their employers for any resulting damages and any award of attorneys' fees.

**Count VIII – State Law Claim**
**Civil Conspiracy**

108.    Each paragraph of this Complaint is incorporated as if restated fully herein.

109.    As described more fully in the preceding paragraphs, the Defendant Officers, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

110.    In furtherance of the conspiracy, the Defendant Officers committed overt acts and were otherwise willful participants in joint activity, including but not limited to the malicious prosecution of Mr. Taylor and the intentional infliction of emotional distress upon him.

111.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Mr. Taylor's rights and the rights of others.

112.     As a proximate result of the Defendant Officers' conspiracy, Mr. Taylor suffered damages, including physical harm, severe emotional distress and anguish, and financial losses, as is more fully alleged above.

**Count IX – State Law Claim**
**Respondeat Superior**

113.     Each paragraph of this Complaint is incorporated as if restated fully herein.

114.     In committing the acts alleged in the preceding paragraphs, some of the Defendant Officers were members of, and agents of, the Village of Dixmoor, acting at all relevant times within the scope of their employment and under color of law.

115.     Defendant Village of Dixmoor is liable as principal for all torts committed by its agents.

**Count X – State Law Claim**
**Indemnification**

116.     Each paragraph of this Complaint is incorporated as if restated fully herein.

117.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

118.     The Defendant Officers are or were employees of the Village of Dixmoor or the Illinois State Police, who acted within the scope of their employment in committing the misconduct described herein.

     WHEREFORE, Plaintiff ROBERT TAYLOR respectfully requests that this Court enter judgment in his favor and against Defendants, Illinois State Police Officers TASSO J.

KACHIROUBAS, JOHN MEDUGA, WILLIE DAVIS, JAMES KIZART, JESSE GARCIA, RICHARD PACKERT, Former Dixmoor Lt. JOSEPH FALICA, JR., Former Dixmoor Deputy Chief of Police MICHAEL R. MORGAN, Former Dixmoor Chief of Police NICHOLAS GRAVES, VILLAGE OF DIXMOOR, As-yet Unknown Current or Former Employees of the Illinois State Police, and As-yet Unknown Current or Former Employees of the Village of Dixmoor, Illinois, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff ROBERT TAYLOR hereby demands a trial by jury.


Respectfully submitted,


**ROBERT TAYLOR**


By: /s/ Alexa Van Brunt
   One of Robert Taylor's Attorneys


Locke E. Bowman
Alexa A. Van Brunt
Sheila A. Bedi (*Pro hac vice* motion to be filed)
Roderick MacArthur Justice Center
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois  60611
(312) 503-0844

Jennifer Blagg
1333 W. Devon Avenue, Suite 267
Chicago, Illinois 60660
(773) 859-0081

J. Samuel Tenenbaum
Bluhm Legal Clinic
Northwestern University School of Law
357 E. Chicago Avenue
Chicago, Illinois  60611
(312) 503-4808