# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
|     Plaintiff, | ) | Judge Joan B. Gottschall |
| | ) | |
| v. | ) | Case No. 12 C 8321 |
| | ) | |
| TASSO KACHIROUBAS, et al., | ) | |
|     Defendants. | ) | |

| | | |
|---|---|---|
| SHAINNE SHARP, | ) | |
|     Plaintiff, | ) | Judge Joan B. Gottschall |
| | ) | |
| v. | ) | Case No. 12 C 8349 |
| | ) | |
| TASSO KACHIROUBAS, et al., | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Shainne Sharp and Robert Taylor have each brought a ten-count complaint pursuant to 42 U.S.C. § 1983 and Illinois state law against various individual Illinois State Police ("ISP") and Village of Dixmoor police officers, the Village of Dixmoor, deceased Dixmoor Police Chief Nicholas Graves, and Dixmoor Deputy Police Chief Michael Morgan. Both cases are assigned to this court. Both complaints allege individual liability as well as *Monell* policy and practice and supervisory liability claims. In both cases, the Village of Dixmoor, Morgan, and Lieutenant Joseph Falica (collectively the "Dixmoor defendants") have moved pursuant to Federal Rule of Civil Procedure 42(b) to bifurcate the supervisory liability and *Monell* claims against the Village of Dixmoor from the claims against the individual defendants. They ask the court to stay discovery on these claims pending resolution of the claims against the individual

officers. Sharp and Taylor oppose bifurcation. For the reasons explained below, the court agrees that bifurcation is proper under Rule 42(b) and grants the motion.

## I. FACTUAL BACKGROUND

Sharp and Taylor allege that they, along with co-defendants Jonathan Barr, Robert Veal, and James Harden, were wrongfully accused and convicted of the rape and murder of 14-year-old Cateresa Matthews in November 1991. Sharp, who was developmentally disabled, was 16 years old at the time of the murder. Taylor was 15 years old.

The ISP and the Dixmoor Police Department jointly investigated the Matthews murder. According to Sharp and Taylor's complaints, ISP and Dixmoor officers routinely picked up and questioned teenage boys in the area about the murder without notifying the boys' parents or documenting the interviews. Those questioned included Sharp, Taylor, and their co-defendants. The reports later produced to Sharp and Taylor's defense counsel did not include documentation of these interviews, in which the boys insisted they knew nothing about the murder. The individual defendant officers then proceeded to manufacture evidence implicating Sharp and Taylor in the crime. The officers fabricated an eyewitness statement by another boy and fed witnesses non-public facts, then falsely reported that the information had originated with the witnesses. They pressured Veal, a 15-year-old with a learning disability, to sign a confession that included facts fed to him by the defendant officers. Sharp and Taylor were then interrogated outside of the presence of a parent, guardian, or attorney, and without being informed of their rights. Taylor was physically abused during the interrogation. Sharp and Taylor signed confessions implicating themselves in the rape and murder of Matthews.

The only evidence connecting Sharp and Taylor to the murder were the confessions attributed to Sharp, Veal, and Taylor. The physical and forensic evidence did not link any of the

five co-defendants to the crime and was inconsistent with the confessions. Sharp pleaded guilty to murder and aggravated kidnapping and was sentenced to twenty years in prison. Taylor was convicted of rape and murder and sentenced to eighty years in prison on February 28, 1997.

Harden, Taylor, and Barr filed a motion for post-conviction DNA testing in August 2009. DNA evidence connected Willie Randolph, a recently paroled sex offender who lived about a mile from where the body was found, to the rape and murder. The prosecution eventually agreed to vacate Taylor and Sharp's convictions and to dismiss all charges against them.

Sharp and Taylor filed suit seeking compensation for the years they spent in prison. Their complaints each include ten counts. The first five counts are brought pursuant to § 1983. Count I alleges the violation of due process based on the conduct of the defendant officers and other ISP and Dixmoor employees, and alleges deliberate indifference by the Village of Dixmoor as to the need to train and supervise its police officers. Count II alleges a violation of the Fifth Amendment's self-incrimination clause. Count III alleges a failure to intervene. Count IV alleges a conspiracy to deprive Sharp and Taylor of their constitutional rights. Count V alleges supervisory liability on the part of Morgan, Graves, and other supervisors, based on both their personal involvement in the investigation and prosecution and their indifference to the misconduct of subordinate officers. Counts VI-VIII are state-law claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy. Count IX is a respondeat superior claim, and Count X is an indemnification count, which alleges that the individual officers acted within the scope of their employment when committing the alleged misconduct, and that their employers are required under Illinois law to pay a judgment against them.

On March 20, 2013, Sharp and Taylor's cases were consolidated for discovery scheduling and supervision with cases filed by Harden (12 C 8316), Barr (12 C 8327), and Veal (12 C 8342). On October 10, 2013, Judge Castillo granted a motion to bifurcate the *Monell* and supervisory liability claims from the claims against the individual officers in the *Barr* case. As of the date of this order, similar motions to bifurcate remain pending in the other cases.

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Courts have broad discretion in deciding whether to bifurcate issues presented in a case. *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000). To sever a claim, the court must determine that separate trials would avoid prejudice to a party or serve the purpose of judicial economy. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).

Courts in this district are frequently presented with motions to bifurcate § 1983 claims brought against a municipality alleging harms resulting from the municipality's customs and policies pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See, e.g.*, *Medina v. City of Chi.*, 100 F. Supp. 2d 893, 894-95 (N.D. Ill. 2000) (listing cases). The court has the discretion to sever the *Monell* claims. *See Treece v. Hochstetler*, 213 F.3d 360, 364-65 (7th Cir. 2000) (district court did not abuse its discretion in bifurcating a trial so as to remove the municipality as a defendant in a § 1983 malicious prosecution case); *Medina*, 100 F. Supp. 2d at 894 ("There is no question that a district court has the discretion to sever a *Monell* claim against a municipality from claims against individual police officers and stay

4

litigation of the *Monell* claim until the rest of the case is resolved.") (internal quotation marks and citation omitted). Whether a motion to bifurcate should be granted must be assessed on a case-by-case basis, considering interests in judicial economy and avoiding prejudice to a party.

**B. Judicial Economy**

The court first considers the burdens presented by the *Monell* claims and whether a finding as to the liability of the individual defendants is likely to eliminate the need for a trial on those claims.

*Monell* claims require proof substantially different from that required when a plaintiff sues only the individual officers who allegedly violated his constitutional rights. A municipality is liable under § 1983 if a constitutional violation was caused by: (1) an official policy adopted and promulgated by its officers; (2) a widespread and settled practice or custom; or (3) an official with final policy-making authority. *Monell*, 436 U.S. at 690. The municipality may be held liable for a harmful practice if it was "deliberately indifferent as to [the] known or obvious consequences" of the practice. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). Where an inadequacy in police training "amounts to deliberate indifference to the citizens the officers encounter," a municipality may be held liable for the failure to train its police officers. *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012).

Courts have frequently noted the heavy burdens of discovery related to *Monell* claims. *See, e.g.*, *Moore v. City of Chi.*, No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007) ("[C]laims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them."); *Ojeda–Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *2 (N.D. Ill. July 16, 2008) ("We agree with the City that it is more efficient to resolve Plaintiffs'

claims against Defendant Officers before turning to the more burdensome and time-consuming task of litigating the *Monell* claim.") (internal quotation marks and citation omitted).

In this case, the facts relevant to the claims against the individual defendants are much narrower than those relevant to the claims against the Village of Dixmoor. Taylor and Sharps' claims against the individual defendants hinge on facts related to the investigation of the Matthews murder, the alleged coercion of their confessions, and the fabrication and withholding of evidence concerning their involvement in the murder. In contrast, the *Monell* claims will turn on facts including—but not limited to—how the Village of Dixmoor trained its police officers, whether the Village was alerted to problems in obtaining confessions or handling juvenile offenders, and how the Village responded to complaints against police officers.

Sharp and Taylor argue that *Monell* discovery will not be particularly burdensome in this case because the Dixmoor Police Department was very small and had no policies and procedures on training in place during the relevant period. Even so, discovery as to training and supervision could be extensive and expensive. Supervisory employees of the Dixmoor Police Department would need to be deposed, and the plaintiffs would likely seek discovery about other allegations of misconduct against Dixmoor police officers, as well as the police department's informal practices in the early 1990s related to witness interviews, handling juvenile suspects, taking confessions, and disclosing exculpatory statements. Thus, bifurcating the *Monell* claim and potentially eliminating the need for this discovery could result in a considerable savings of time and money.

More important is the question of whether these burdens are likely to be avoided by proceeding initially on the claims against the individual defendants. Typically, when a plaintiff brings a *Monell* claim against a municipality based on the conduct of one of its employees, the

6

plaintiff cannot prevail without showing that the employee violated his constitutional rights. *See Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). For this reason, courts often justify bifurcating *Monell* claims based on the possibility that a finding in favor of the individual defendants will moot the claim against the municipality, while a finding against the individual defendants will provide the plaintiff with a full recovery.

There are situations in which the liability of the municipality does not hinge on the conduct on the individual officers, and the municipality may be held liable even when its officers are not. The plaintiffs rely heavily on the Seventh Circuit's conclusion in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir. 2010), that there is no blanket rule requiring an individual officer to be found liable for a municipality to be held liable under *Monell*. The appellate court explained that the rule established by *Heller* is narrower:

> [A] municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict. *See* [*Heller*, 475 U.S. at 798-99; *see also id.* at 801 (Stevens, J., dissenting)]. So, to determine whether the County's liability is dependent on its officers, we look to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth. *See Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002).

*Thomas*, 604 F.3d at 305. The Seventh Circuit concluded in *Thomas* that even though no Cook County employees were found liable for the plaintiff's death resulting from a lack of medical care at the Cook County jail, the county itself could still be held liable under *Monell*. *Id.*

*Thomas*, however, presented a fact pattern entirely distinct from this case. In *Thomas*, the allegations against Cook County included the failure to review requests for medical assistance— a "policy" which was the driving force behind the harm suffered. Under the circumstances, an individual correctional officer could have been found not liable for deliberate indifference to the plaintiff's medical needs because it was the breakdown in the county-level system for responding to medical requests that prevented the plaintiff from receiving assistance. *Id.* Here, however, the

7

actions of the individual officers in collecting and fabricating evidence against Sharp and Taylor are the source of the alleged harm to the plaintiffs, and any "policy" exerted harm through those actions, not independently of them. It follows that, if the individual officers prevail on the question of whether they violated Sharp and Taylors' constitutional rights, the time and expense required to litigate the claims against the Village of Dixmoor, as well as the supervisory liability claims, would be saved.

Sharp and Taylor argue that the individual defendants might prevail on a defense of qualified immunity. The court notes that the defendants' answers to the complaints do assert the defense of qualified immunity. Without delving into the merits of the claims, however, it appears unlikely that such a defense is compatible with charges that include the fabrication of evidence and the coercion of confessions. Moreover, the most relevant issue is whether the individual defendants committed a constitutional violation that is a prerequisite for the Village of Dixmoor's liability, not whether the individual defendants can actually be held liable for the violation. In any event, should the individual defendants prevail before trial on the issue of qualified immunity, the court can revisit the bifurcation issue.

## C. Prejudice to a Party

Sharp and Taylor argue that if the court grants the motion to bifurcate, they will be prejudiced because they will be denied the opportunity to hold the Village of Dixmoor and its supervising officials responsible for the violation of their rights. The court recognizes that this suit is about more than monetary damages. Even so, bifurcation will not prevent the plaintiffs from obtaining compensation if they prove they have suffered a constitutional injury. The plaintiffs do not argue otherwise. The complaint includes respondeat superior and indemnification counts, and in seeking the appointment of a special administrator for the estate

of Graves, the plaintiffs represented that any judgment against Graves would be satisfied by the Village of Dixmoor's liability insurance. (Mot. to Appoint 3, ECF No. 51.) Requiring the bill for compensation of the plaintiffs to be footed by the Village of Dixmoor should help to deter future police misconduct. *See Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007) ("[I]f damages grow too large, then the city will change its policies, customs, and practices."). Moreover, Sharp and Taylor may pursue the *Monell* claims, if they remain viable, after the claims against the individual defendants are resolved. *See Elrod v. City of Chi.*, No. 07 C 203, 2007 WL 3241352, at *8 (N.D. Ill. Nov. 1, 2007). The delay in their ability to pursue those claims does not outweigh the interest in judicial efficiency served by bifurcating the claims.

### III. CONCLUSION

The court finds that bifurcation will serve the interest of judicial economy, and the Dixmoor Defendants' motion to bifurcate discovery is granted. Discovery relevant exclusively to the *Monell* claims and to supervisory liability is stayed. If discovery is relevant to both the *Monell* claims and to claims against individual officers, however, it may proceed. Discovery may proceed as to the personal participation of any of the defendants, including supervisors, in the alleged violations. Discovery may also proceed as to the identities of unnamed defendants.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: November 15, 2013